**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on October 29, 2010, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: October 29, 2010**

_(signature)_
_____
**Arthur I. Harris**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 09-12005 |
| | ) | |
| RICHARD SHEEHAN and | ) | Chapter 7 |
| LINDA SHEEHAN, | ) | |
|     Debtors. | ) | Adversary Proceeding |
| _____ | ) | No. 09-1351 |
| RICHARD SHEEHAN and | ) | |
| LINDA SHEEHAN, | ) | Judge Arthur I. Harris |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF | ) | |
| AMERICA, | | |
|     Defendant. | | |
| _____ | | |

### MEMORANDUM OF OPINION[1]

This matter is currently before the Court on cross-motions for summary

judgment.  The debtors seek a determination that their tax liabilities for the years

_____

[1]  This Memorandum of Opinion is not intended for official publication.

1997, 1998, 1999, 2002, 2003, and 2004 are dischargeable. The debtors also seek a determination as to the amount and validity of the United States' tax liens. For the reasons that follow, the Court holds that: (1) the dischargeability of both debtors' tax liability for the year 1997 is moot; (2) the dischargeability of Mrs. Sheehan's tax liabilities for the remaining years is not ripe for decision; (3) Mr. Sheehan's tax liabilities for the years 1998, 1999, 2002, 2003, and 2004 are nondischargeable under 11 U.S.C. § 523(a)(1)(C); and (4) neither party has properly addressed the debtors' second cause of action seeking a determination of the amount and validity of the United States' tax liens. Accordingly, the debtors' motion for summary judgment is denied, the United States' motion for summary judgment is granted in part, and the debtors' second cause of action will be the subject of further proceedings.

FACTS AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. On March 13, 2009, the debtors, Richard and Linda Sheehan, filed a voluntary petition under Chapter 7. On July 30, 2009, the Court entered a discharge. On October 23, 2009, the debtors commenced this adversary proceeding seeking a determination that their tax liabilities for the years 1997, 1998, 1999, 2002, 2003, and 2004 are dischargeable. The debtors also seek a determination as to the amount and validity

2

of the United States' tax liens.

During the relevant tax years, Mr. Sheehan was a commercial real estate broker, apparently working on an independent contractor basis for Grubb & Ellis, and Mrs. Sheehan was a homemaker. The debtors filed joint tax returns for 1997, 1998, 1999, 2002, 2003, and 2004 and applications for extension of time to file their income tax return for each of these years. (Docket #38-3). The debtors admit they had the duty to pay federal income taxes for the tax years in question; they knew of their duty to pay federal income taxes during this time; they made no estimated tax payments for these tax years; and they had no withholding of taxes taken out of wages. (Docket #38-1).

The following is a breakdown of Mr. Sheehan's income and tax liabilities:

| Year | Total Income | AGI Reported | Total Tax | Tax Owed as of 8/23/10 as calculated by IRS | Interest on Tax as of 8/23/10 as calculated by IRS |
|------|------|------|------|------|------|
| 1997 | $101,286 | $95,886 | $28,131 | $23,631 | $28,687.75 |
| 1998 | $106,067 | $98,033 | $27,453 | $27,453 | $28,790.36 |
| 1999 | $115,325 | $105,816 | $30,030 | $30,030 | $26,754.63 |
| 2002 | $102,840 | $90,260 | $23,483 | $22,283 | $11,728.94 |
| 2003 | $100,642 | $85,788 | $19,359 | $20,559 | $9,391.92 |
| 2004 | $111,161 | $94,823 | $21,758 | $21,758 | $8,460.23 |
| Total | $637,321 | $570,606 | $150,214 | $145,714 | $113,813.83 |

3

The "Total Income" numbers are from the first and second pages of debtors' 1040 Tax Returns. (Docket #38-3). As of August 23, 2010, Mr. Sheehan owes more than $259,000 in taxes and interest for the tax years at issue. (Docket #38-4 ¶ 2). Mr. Sheehan has not made an estimated tax payment since September 22, 1997. (Docket #38-4 ¶ 11).

Mr. Sheehan did not make any voluntary payments for the 1997-2004 tax years from September 22, 1997, until April 21, 2008, when Mr. Sheehan submitted a one-time payment of $350, which was applied to the 1997 liabilities. (Docket #38-4 ¶ 12). Mr. Sheehan's delinquent tax debts began well before the tax years in question.

*Mr. Sheehan's 1993 Tax Liability:* In 1994, Mr. Sheehan filed his 1993 tax return timely. (Docket #38-4 ¶ 13). He did not remit any payment with his tax return and had no withholding credits. (Docket #38-4 ¶ 13). Mr. Sheehan entered into an installment agreement in March 1997 and made a few monthly payments toward his 1993 tax liability but then defaulted on the agreement before the end of 1997. (Docket #38-4 ¶ 13). On July 19, 2004, any remaining liabilities for the 1993 tax year were removed from the system and were not collected because the statute of limitations for collection expired. (Docket #38-4 ¶ 13).

4

*Mr. Sheehan's 1995 Tax Liability:* In 1996, Mr. Sheehan filed his 1995 tax return in October. (Docket #38-4 ¶ 14). He did not remit any payment with his tax return and had no withholding credits. (Docket #38-4 ¶ 14). He made a one time payment of $3,500 in March of 1997 toward his 1995 tax liabilities. (Docket #38-4 ¶ 14). On December 4, 2006, any remaining liabilities for the 1995 tax year were removed from the system, and were not collected, because the statute of limitations for collection expired. (Docket #38-4 ¶ 14).

*Mr. Sheehan's 1996 Tax Liability:* In 1997, Mr. Sheehan filed his 1996 tax return in November. (Docket #38-4 ¶ 15). He did not remit any payment with his tax return and had no withholding credits. (Docket #38-4 ¶ 15). On December 3, 2007, the remaining liabilities left for the 1996 tax year, $26,571.98, were removed from the system and were not collected because the statute of limitations for collection expired. (Docket #38-4 ¶ 15).

In 1992 and 1995, the IRS filed tax liens for Mr. Sheehan's unpaid tax liabilities with the Cuyahoga County Recorder's Office (Docket #39 at 6-7 n.2). In 1997 and 1999, Mr. Sheehan filed his tax returns late, despite the fact he had requested and been granted an extension to file. (Docket #38-3 at 2, 8, 19-20, 27). In 1999 and 2000, the IRS sent notices of intent to levy to Mr. Sheehan on several

5

occasions and received completed return-receipts for these notices on four

occasions.  (Docket #38-4 ¶ 7).  On July 14, 2000, the IRS filed a Notice of Federal

Tax Lien with the Cuyahoga County Recorder's Office.

(Docket #38-4 ¶ 8).  On November 13, 2000, a levy payment was applied to the

1996 tax year in the amount of $1,175.80.  (Docket #38-4 ¶ 15).

In December, 2000, Mr. Sheehan took a draw from Grubb & Ellis for

$36,000.  (Docket #39-4 at 2).  In an e-mail explaining the decision to advance Mr.

Sheehan money in anticipation of future commissions, a supervisor wrote:

> Due to his low income for 2000, the IRS has backed off and essentially is
> considering [Mr. Sheehan] uncollectable at this point. Richard has agreed to
> keep current from now on, with no further action on the past due amounts at
> this point. Frankly, he is dealing with a cash flow issue for the next several
> months, along with the necessity to pay taxes.

(Docket #39-4 at 1).

From October 1997 to May 2002, the Sheehans spent over $4,000 at a dining

and social club known as the Clifton Club in Lakewood, Ohio.

(Docket #39-1).  In 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005,

Mr. Sheehan took trips to Las Vegas for an annual real-estate conference

(Docket #38-2 at 1-2).  In approximately 2005 and 2006, the debtors went on a

vacation to the Bahamas and another vacation to Cancun.

6

(Docket #42 at 6, 38 at 10).

From 2003 to 2008, Mr. Sheehan made numerous checks out to "Richard Sheehan" or to "Cash." (Docket #38-7, 38-5). These checks totaled over $200,000. (Docket #38-7, 38-5). When asked to explain these withdrawals in his deposition, Mr. Sheehan said he "didn't like having a lot of money in my checking account . . . because I didn't know what would happen with it." (Docket #38-2 at 12).

The following is an excerpt from Mr. Sheehan's deposition:

A. [ . . . ] if I would take money out, I would take it out and then probably redeposit it and --
Q. Redeposit it where?
A. Same checking account.
Q. Why?
A. Because now I'm paying -- I am paying bills.
Q. Why would you take it out and redeposit it?
A. Because I didn't want to leave $5,000 in my account.
Q. Because a creditor might come after it?
A. Correct.
Q. Like the IRS?
A. I wasn't thinking of the IRS, but that's -- I guess that would be possible.

(Docket # 38-2 at 13). Mr. Sheehan also admitted that every once in awhile the "IRS was coming after me" and that he paid off credit cards and other debts, such as bills and utilities, but did not pay the United States. (Docket #38-2 at 8).

In 2003, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash"

7

for the following amounts on the following dates: $1,000 in July; $2,500 on November 20 (check 4760); $4,000 on November 21 (check 4761); $4,800 on December 15; $1,200 on December 21; $10,000 on December 23; and $7,000 on December 30. (Docket #38-5 at 3, 5, 1, 2, 6, 7, 8).

In 2004, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash" for the following amounts on the following dates: $8,000 on January 6; $2,500 on June 18; $4,000 on July 8; $5,000 on September 3. (Docket #38-5 at 9-11). In October 2004, Mr. Sheehan submitted his 2003 tax return, which stated he owed $19,859 in taxes but remitted no payment. (Docket #38-3 at 39). In November, 2004, Mr. Sheehan wrote checks totaling $30,000 – $8,000 on November 12; $8,000 on November 15; $6,000 on November 16; and $8,000 on November 30 (Docket #38-5 at 12-15).

In 2005, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash" for the following amounts on the following dates: $8,000 on January 7; $1,000 on January 10; $4,200 on May 17; $1,000 in June; $1,500 on July 5; $2,500 on July 18; $2,000 on August 16; $2,000 on September 15; $2,000 on October 3; $2,000 on October 12; $1,500 on November 1; $2,500 on November 22; $2,000 on November 30; and $1,000 on December 23. (Docket #38-5 at 17-31).

In 2006, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash"

8

for the following amounts on the following dates: $1,000 on January 4; $2,000 on January 18; $2,400 on February 1; $2,000 on February 23; $2,500 on March 7; $3,500 on July 13; $2,000 on November 2; $2,500 on November 18; $7,000 on December 8; and $7,000 on December 26. (Docket #38-5 at 31-40).

In 2007, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash" for the following amounts on the following dates: $2,500 on January 5; $1,500 on February 8; $8,500 on September 14; $8,000 on September 26; and $4,500 on December 4. (Docket #38-5 at 41-45).

In 2008, Mr. Sheehan made checks out to "Richard Sheehan" or to "Cash" for the following amounts on the following dates: $3,000 on February 7; $8,000 on October 16; $4,000 on December 4; and $6,000 on December 18. (Docket #38-5 at 46-49). Mr. Sheehan has not voluntarily paid any of his tax liabilities for 2006, 2007, or 2008. (Docket #38-4 ¶ 6).

On February 24, 2009, the IRS received a levy payment of $30.25 from a levy on one of Mr. Sheehan's bank accounts. (Docket #38-4 ¶ 9). On March 2, 2009, the IRS received a levy payment of $222.50 from a levy on one of Mr. Sheehan's bank accounts. (Docket #38-4 ¶ 10). On March 13, 2009, the Sheehans filed a voluntary petition under Chapter 7.

9

## JURISDICTION

The Court has jurisdiction over the debtors' first cause of action seeking the dischargeability of certain tax debts, subject to the issue of mootness regarding both debtors' tax liability for the year 1997 and the issue of ripeness regarding Mrs. Sheehan's tax liabilities for the remaining years. Claims for determinations of the dischargeability of debts under § 523 are core proceedings under 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 1334, which fall within the jurisdiction granted to the Court pursuant to Local General Order Number 84, dated July 16, 1984.

The Court makes no determination as to jurisdiction with respect to the debtors' second cause of action seeking a determination of the amount and validity of the United States' tax liens. As neither party has properly addressed this second cause of action in its summary judgment motions and briefs, the debtors' second cause of action will be the subject of further proceedings.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

10

The moving party bears the burden of showing that "there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). The Court shall view all evidence in a light most favorable to the nonmoving party when determining the existence or nonexistence of a material fact. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion

11

is under consideration." *Id.*; *accord In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 735 (6th Cir. 2001) (citing several cases reaching same conclusion).

## DISCUSSION

### 1. Tax Liability of Both Debtors for the Year 1997

In its briefing on summary judgment, the United States concedes that it is precluded from collecting on the debtors' tax liability for the year 1997 because the statutory period for collection has expired. (*See* Docket #40 at n.1). Therefore, the dischargeability of the debtors' tax liability for the year 1997 is moot. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974); *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).

### 2. Dischargeability of Mrs. Sheehan's Tax Liabilities For the Remaining Years

In its briefing on summary judgment, the United States asserts that the dischargeability of Mrs. Sheehan's tax liabilities for the remaining years is not ripe for decision because the United States does not contend that her tax liabilities for the years in question are excepted from discharge. The Court agrees.

In *In re Mlincek*, 350 B.R. 764 (Bankr. N.D. Ohio 2006), this Court addressed a similar issue of ripeness in an adversary proceeding in which the debtors sought a determination that their tax liability for the year 2000 would not be excepted from discharge under 11 U.S.C. § 523(a)(1). The United States moved

12

to dismiss the adversary complaint as not ripe for decision because there was no

pending or threatened action by the United States to collect the tax in question and

the United States intended to abate the debtors' tax upon entry of the debtors'

discharge.  The Court declined to exercise jurisdiction for prudential reasons and

granted the United States' motion to dismiss.

As this Court explained in *Mlincek*:

> Ripeness is a justiciability doctrine designed "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Nat'l Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803, 807 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)).  In deciding whether a case is ripe for adjudication, courts must weigh three factors: "1) 'the likelihood that the harm alleged by the plaintiffs will ever come to pass'; 2) 'whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims'; and 3) 'the hardship to the parties if judicial relief is denied at this stage in the proceedings.' " *Kentucky Press Ass'n*, 454 F.3d 505, 509 (2006) (quoting *Adult Video Ass'n v. Dept. of Justice*, 71 F.3d 563, 568 (6th Cir. 1995)).

350 B.R. at 768-69.

In applying these factors to the present proceeding, there is little likelihood

that the United States will begin collection efforts against Mrs. Sheehan for the tax

years in question given its disinterest in adjudicating whether these liabilities are

nondischargeable.  Nor is the record sufficiently developed to produce a fair

adjudication of the merits of Mrs. Sheehan's claims.  Finally, Mrs. Sheehan will

13

suffer little hardship if the Court dismisses her cause of action as unripe because she would remain free to refile her adversary proceeding should the United States ever commence or threaten to commence collection efforts against her for the tax years in question. Accordingly, Mrs. Sheehan's cause of action seeking a determination of dischargeability as to her tax liabilities for the years 1998, 1999, 2002, 2003, and 2004 is dismissed without prejudice.

  3. *Dischargeability of Mr. Sheehan's Tax Liability For the Remaining Years*

  Willful tax evasion is nondischargeable under 11 U.S.C. § 523(a)(1)(C).

Section 523 provides in relevant part:

> (a) [A] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>> (1) for a tax
>>> (C) With respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax.

In  *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 558 (6th Cir. 2004), the Sixth Circuit addressed in detail the elements that the United States must prove to establish nondischargeability under section 523(a)(1)(C).

> The Sixth Circuit has interpreted the Code's phrase "willfully attempted in any manner to evade or defeat such tax" as requiring a voluntary, conscious, and intentional evasion. *In re Toti*, 24 F.3d 806, 809 (6th Cir.), *cert. denied*, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). This court's opinion in *Toti* cast a wide net, concluding that § 523(a)(1)(C) included attempts to thwart payment of taxes. . . . Thus, *Toti* clarified that § 523(a)(1)(C) covered both acts of omission, such as failure to file returns and failure to pay taxes, and acts of commission, such as

14

affirmative acts of evasion. *Toti*, 24 F.3d at 809. Moreover, while nonpayment alone is insufficient to bar discharge of a tax obligation, a "knowing and deliberate" nonpayment provides the basis for determining that the tax debt is non-dischargeable. *See In re Birkenstock*, 87 F.3d 947, 952 (7th Cir.1996).

The government must prove by a preponderance of the evidence that the debtor willfully attempted to evade the tax liability. Section 523(a)(1)(C) renders a tax debt non-dischargeable where the debtor willfully attempted to evade or defeat *payment* of the taxes, even though the debtor, as in the instant case, did not attempt to defeat the *assessment* of the taxes. *In re Griffith*, 206 F.3d 1389, 1396-97 (11th Cir.2000).

The case law has divided the analysis into two segments a conduct requirement and a mental state requirement. *United States. v. Fretz (In re Fretz)*, 244 F.3d 1323, 1327-29 (11th Cir.2001). The government satisfies the conduct requirement when it proves the debtor engaged in affirmative acts to avoid payment or collection of the taxes. . . . Under the mental state requirement, the government must prove the debtor voluntarily, consciously, and knowingly evaded payment. *Toti*, 24 F.3d at 809. The mental state requirement is proven when the debtor:

(1) had a duty to pay taxes;

(2) knew he had such a duty; and

(3) voluntarily and intentionally violated that duty

*Fretz*, 244 F.3d at 1330.

360 F.3d at 557-58.

A. *No Genuine Issue of Material Fact as to Conduct Requirement*

Courts may consider subsequent conduct after the tax years in question when determining whether the debtor's tax liability is excepted from discharge. *See United States. v. Gardner*, No. 95-33799(3)(7), 2001 WL 846494 (Bankr. W.D. Ky. May 22, 2001) (finding conduct and intent evidenced by lavish lifestyle and nominee bank accounts in 1992 to 1995 excepted 1990 and 1991 tax years from

15

discharge), *aff'd Gardner v. United States*, No. 3:01CV-514-H, 2002 WL 741102, (W.D. Ky. Mar. 20, 2002), *aff'd* 360 F.3d 551 (6th Cir. 2004).

An act of omission occurs when the debtor fails to file tax returns and pay taxes. *In re Volpe*, 377 B.R. 579, 586 (Bankr. N.D. Ohio 2007). Affirmative acts occur when the debtor conceals assets, shields income, and frustrates various tax collection efforts when the debtor knows tax collection efforts are being made. *Gardner*, 360 F.3d at 558-59.

Based upon the pleadings and the discovery and disclosure materials on file, there is no genuine issue of material fact as to whether the United States has established the conduct requirement for nondischargeability under section 523(a)(1)(C) and *Gardner*. First, the record establishes that despite reporting business income in excess of $100,000 for each of the years at issue, Mr. Sheehan failed to make any estimated tax payments, failed to pay any taxes when filing his tax returns, and failed to pay any taxes after mailing his tax returns without any payment. In addition to these acts of omission, Mr. Sheehan also engaged in acts of commission, such as affirmative acts of evasion. For example, Mr. Sheehan deliberately moved funds out of his checking account to keep them away from creditors, which he knew included the IRS. These cash withdrawals greatly reduced assets subject to IRS execution. Mr. Sheehan made over $200,000

16

in withdrawals from his checking account from 2003 to 2008 after he had notice of IRS tax liens and collection efforts in 2000. Even though Mr. Sheehan filed tax returns, he never made estimated tax payments and never paid any taxes. By failing to make estimated payments, failing to pay any taxes, and by constantly moving money out of his checking account, Mr. Sheehan frustrated tax-collection efforts when he knew such efforts were ongoing. Thus, based upon the pleadings and the discovery and disclosure materials on file, there is no genuine issue of material fact as to whether the United States has established the conduct requirement for nondischargeability under section 523(a)(1)(C) and *Gardner*.

   B.  *No Genuine Issue of Material Fact as to Mental State Requirement*

   "Under the mental state requirement, the government must prove the debtor voluntarily, consciously, and knowingly evaded payment." *Gardner*, 360 F.3d at 558 (citing *Toti*, 24 F.3d at 809). "The mental state requirement is proven when the debtor: (1) had a duty to pay taxes; (2) knew he had such a duty; and (3) voluntarily and intentionally violated that duty." *Gardner*, 360 F.3d at 588 (citing *Fretz*, 244 F.3d at 1330) .

   In *Gardner*, the Sixth Circuit cited as evidence of Gardner's intent to evade payment of taxes: (1) that he lived lavishly during the period of time the IRS sought to collect the tax liability, (2) that he used nominee bank accounts to

17

conceal from the IRS large deposits of income not reflected on the required financial statements, and (3) that he had the ability to pay the taxes. 360 F.3d at 558. Because there is rarely direct proof of a debtor's intent, intent may be proven by circumstantial evidence. *Volpe*, 377 B.R. at 586.

In the present case, the first two elements of the mental state requirement identified by the Sixth Circuit in *Gardner* – that Mr. Sheehan had a duty to pay taxes and that Mr. Sheehan knew he had such a duty – are undisputed. (Docket #35 at 4). The third element – that Mr. Sheehan voluntarily and intentionally violated that duty – is contested by Mr. Sheehan and requires more detailed discussion.

In moving for summary judgment in the present case, the United States points to a number of examples in the record that it contends establish that Mr. Sheehan voluntarily, consciously, and knowingly evaded payment of taxes for the years in question. They include:

- Mr. Sheehan's reporting annual income in excess of $100,000 for each of the years in question;

- Mr. Sheehan's failure to make any estimated tax payments since Sept. 22, 1997;

- Mr. Sheehan's failure to voluntarily pay even a single dollar of tax owed for over ten years (from Sept. 22, 1997, until April 21, 2008, when he made a payment of $350);

18

- Mr. Sheehan's failure to pay taxes reported as owed with his 1993, 1995, and 1996 returns;

- Mr. Sheehan's late filing of his 1997 and 1999 Form 1040s;

- Mr. Sheehan's withdrawals and transfers of cash; for example, in Nov. 2004 Mr Sheehan wrote four checks to himself – each over $5,000, and totaling $30,000 – just a month after filing his 2003 tax return that remitted no payment to the IRS, despite reporting a tax due of $19,859;

- Mr. Sheehan's practice of hiding money from his creditors by writing checks to himself after receiving a real estate commission and redepositing the money when he needed to write a check;

- the Sheehans' discretionary spending of over $4,000 at a dining and social club known as the Clifton Club in Lakewood, Ohio, from 1997 through 2002;

- the Sheehans' discretionary spending on a vacation to the Bahamas and another vacation to Cancun in approximately 2005 or 2006;

- a $36,000 loan that Mr. Sheehan sought and obtained in December 2000 from Grubb & Ellis; in seeking this loan, Mr. Sheehan represented to Grubb & Ellis that he had outstanding tax debts and "has agreed to keep current from now on," when, in fact, he continued the same pattern of nonpayment of taxes going forward, including taxes in 2002, 2003, and 2004.

In opposing the United States' motion for summary judgment, Mr. Sheehan contends that his conduct is unlike that of the debtor in *Gardner* or others whose debts were found to be nondischargeable under section 523(a)(1)(C). For example, Mr. Sheehan asserts that he has not been convicted of tax evasion, is not a "tax protestor," has not lived nearly as lavish a lifestyle as that of the debtor in *Gardner*, owns no real property, sent his children to public school, twice underwent

19

voluntary credit counseling, and had sporadic income, including combined earnings of less than $24,000 in 2000 and 2001, which made it difficult for him to pay taxes. Although Mr. Sheehan has not submitted any affidavits and has not cited to any pleadings or discovery and disclosure materials on file, the Court will assume, for purposes of summary judgment, that the Sheehans had combined earnings of less than $24,000 in 2000 and 2001. The Court will not assume that the Sheehans underwent any credit counseling other than the briefing session they completed under 11 U.S.C. § 109 just before filing their Chapter 7 petition in March 2009.

The question for the Court remains – construing the evidence in a light most favorable to Mr. Sheehan, is there a genuine issue of material fact as to the mental state requirement under section 523(a)(1)(C)?

"Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). Thus, a ruling on summary judgment is often inappropriate when resolution of the substantive claim requires a determination of a person's state of mind. On the other hand, "[c]ases involving state of mind issues are not necessarily inappropriate for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th

20

Cir. 1989).  Whether summary judgment is appropriate ultimately depends on the record before the Court.  To paraphrase the Sixth Circuit, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, is the evidence so powerful that no reasonable finder of fact would be free to disbelieve it?  *See Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).

In the present case, the Court concludes that no reasonable finder of fact would find in favor of Mr. Sheehan on the mental state requirement of section 523(a)(1)(C), even construing the evidence in a light most favorable to Mr. Sheehan.  While the Court concedes that Mr. Sheehan may not have lived as lavish a lifestyle as that of the debtor in *Gardner* and that Mr. Sheehan may have had difficulty paying *all* of his tax liability after having gone for so long without paying *any* taxes, there is simply no innocent explanation for Mr. Sheehan's conceded practice of hiding money from his creditors by moving money in and out of his checking account at a time when he knew those creditors included the IRS.  This fact, when coupled with the other substantial evidence described previously, leaves the Court to conclude that there is no genuine issue of material fact as to whether Mr. Sheehan voluntarily and intentionally violated his duty to pay taxes under section 523(a)(1)(C) and *Gardner*.

21

Accordingly, the United States is entitled to summary judgment on the issue of the nondischargeability under 11 U.S.C. § 523(a)(1)(C) of Mr. Sheehan's tax liabilities for the years 1998, 1999, 2002, 2003, and 2004.

### 4. Debtors' Second Cause of Action Seeking a Determination of the Amount and Validity of the United States' Tax Liens

In their second cause of action, the debtors seek a determination of the amount and validity of the United States' tax liens. The cause of action also appears to allege that the tax liens may impair the debtors' interest in exempt property, although 11 U.S.C. § 522(f)(1)(A) only allows debtors to avoid the fixing of *judicial* liens, not tax liens. In its answer, the United States asserts that the Court lacks subject matter jurisdiction over this cause of action. The United States also denies that the matter is a core proceeding, but fails to include in its answer "a statement that [it] does or does not consent to entry of final orders or judgment by the bankruptcy judge" as required under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Nor has either party addressed this cause of action in its summary judgment briefing. Accordingly, the debtors' second cause of action will be the subject of further proceedings. Counsel shall be prepared to advise the Court at a status conference at 1:30 p.m. on November 30, 2010, as to what additional steps are needed to resolve the debtors' second cause of action.

22

## CONCLUSION

For the reasons stated above, the Court holds that: (1) the dischargeability of both debtors' tax liability for the year 1997 is moot; (2) the dischargeability of Mrs. Sheehan's tax liabilities for the remaining years is not ripe for decision; (3) Mr. Sheehan's tax liabilities for the years 1998, 1999, 2002, 2003, and 2004 are nondischargeable under 11 U.S.C. § 523(a)(1)(C); and (4) neither party has properly addressed the debtors' second cause of action seeking a determination of the amount and validity of the United States' tax liens.  Accordingly, the debtors' motion for summary judgment is denied, the United States' motion for summary judgment is granted in part, and the debtors' second cause of action will be the subject of further proceedings.  While it appears that this decision is largely dispositive of the issues briefed by the parties, until there is a final decision on the debtors' second cause of action, this is not a final judgment for purposes of 28 U.S.C. § 158.  *See* Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54(b).  The Court will conduct a status conference at 1:30 p.m. on November 30, 2010.  Counsel shall be prepared to advise the Court as to what additional steps are needed to resolve all remaining claims in this adversary proceeding.

IT IS SO ORDERED.